## David Lyman *vs.* Joseph H. Parsons and others.

A testator by his will gave certain specific property to his wife, and directed his executors to pay her $700 annually so long as she remained unmarried. He then gave the residue of his estate in trust, two-fifths for the sole use of his son, his heirs and assigns forever, and three-fifths for the sole use of his three daughters respectively, their heirs and assigns forever ; and directed the trustees, during the minority of the children, to expend such sums for their support and education as they should deem expedient, charging the sums expended for each on his or her share of the estate.   The will then directed the trustees to pay to the son, on his attaining the age of twenty-one years, $5,000, and if they should judge best a further sum not exceeding $5,000,—on his attaining the age of twenty-three, such sum as they should deem best, not exceeding $10,000,—on his attaining the age of twenty-five, such sum as they

should deem best, not exceeding $10,000 in any one year,—and so on in biennial payments, until his share should be fully paid. It then directed the trustees to pay to each of the daughters on her attaining the age of twenty-one years, $2,000, and every two years thereafter a further sum of $2,000 until the share of each should be fully paid, with a discretion in the trustees, after the first payment, to reduce the subsequent payments, provided they made no unnecessary delay in making ultimate payment of the share of each. The will then provided that if either of the children should die before receiving full payment of his or her share, leaving no lawful issue, the share of such child remaining in the hands of the trustees, should be paid in certain proportions to the survivors, their heirs or assigns forever;—but that if such decedent should leave lawful issue, such issue should be entitled in equal portions to the share of the parent remaining in the hands of the trustees,—such share to be held and disposed of by the trustees in such manner that such issue only and their legal representatives should have the benefit thereof. The testator then gave directions to the executors to sell various specified pieces of real estate, and add the proceeds of the sales to the general fund; and that sundry notes and bills of exchange should be collected by them, and all the funds thence derived, as well as all other funds which should come into their hands, safely invested in interest paying stocks, till wanted to fulfill the provisions of the will. The testator at the time of his death, left the four children named in the will, all of whom were minors, and estate real and personal valued at about $147,000, of which the residue, which was the subject of the trust, was about $130,000. Upon an application of the trustees for the advice of the court as to the construction of the will, particularly with regard to the disposition to be made of the income of the estate,—it was held,

1. That the " general fund," provided for by the will, was to consist of the *corpus* of the estate and of all accessions thereto from the income; which fund was to be a single one, to the management and disposition of which one rule was to be applied, and from which, without discrimination, all the payments were to be made.

2. That the biennial payments expressly provided for by the will, were all the payments that the trustees were authorized to make to the children; and that the latter were not entitled to payment of the income of the estate in addition thereto.

3. That it was no valid objection to this view, that in the case of the daughters the income of the shares would exceed the biennial payments, and that thus they might never receive full payment of their shares, since the will had made express provision for the payment to their issue of such portions of their shares as might remain unpaid at the times of their deaths.

4. That although the clause of the will which gives the residue of the estate to the executors in trust for the children, their heirs and assigns forever, might, taken by itself, create a vested equitable estate in the children, yet that this clause was qualified by the provisions which follow and which are to be taken in connection with it, which give to the trustees a discretionary control over the payments.

5. That even if the shares of the children were to be regarded as vested equitable estates, yet it did not follow that they were entitled, as a matter of law, to payment of the income of the shares, since the bequests were not, as a

result of that view, to be regarded as delivered from the controlling discretion of the trustees, and the question of the right of the children to the income must still depend on the intention of the testator, who had declared expressly what payments should be made to the children.

THIS was an application to the superior court by an executor and trustee, for its advice as to the construction of a will. The petition was dated February 16, 1857.

Samuel Parsons, of Durham, in Middlesex county, died on the 24th day of October, 1848, leaving a will executed on the 7th of that month, the portion of which important to the present case is as follows:

2. I give, devise and bequeath to my wife Elizabeth Parsons, the place whereon I now reside, in said Durham, containing three acres, more or less, with the dwelling-house and other buildings thereon; also, all my furniture (except a Piano Forte) and all my books and wearing apparel; also, my horse, and all my carriages and wagons with all their harnesses and other appendages; also, all my farming utensils and all provisions on hand at the time of my decease: To have and to hold, in lieu of dower, to her the said Elizabeth Parsons and her heirs and assigns forever.

3. In addition to the foregoing devise and bequest to my said wife, I direct my executors to pay to her annually from my estate the sum of seven hundred dollars in each and every year during the time she shall remain unmarried, payable in equal quarterly payments; and on the decease or marriage of my said wife, the said annuity shall cease and determine.

4. I give and bequeath my Piano Forte to my daughter Catharine M. Parsons and her heirs and assigns forever.

5. All the rest, residue, and remainder of my estate, real and personal, of every nature and description, that shall belong to me, or to which I shall be in any way or manner entitled at law or in equity at the time of my decease, subject to the foregoing provision for my said wife, I give, devise and bequeath to my executors hereinafter named, and their heirs, executors, administrators and assigns, in trust, two-fifth parts thereof for the sole use and benefit of my son

Joseph H. Parsons and his heirs and assigns forever, and the remaining three-fifth parts thereof for the sole use and benefit of my daughters Catharine M. Parsons, Elizabeth A. Parsons, and Caroline J. Parsons, in equal shares, to them respectively and their respective heirs and assigns forever. During the minority of my said children respectively, the said trustees are directed to expend such sums for their support and education respectively as may seem to be expedient, charging the sums expended for each towards his or her share of my said estate.

The said trustees shall pay to my said son, on his attaining to the age of twenty-one years, the sum of five thousand dollars, and, if they judge best, a further sum not exceeding five thousand dollars more, if they think it will be for his interest; on his attaining to the age of twenty-three years, the said trustees shall pay to him such an amount as they shall deem it most for his interest to receive, not exceeding ten thousand dollars ; on his attaining to the age of twenty-five years, the said trustees shall pay to him such sums as in their sound discretion they shall consider it most for his interest to receive, but not exceeding in any one year the sum of ten thousand dollars ; and they shall so continue to make such payments from one period of two years to another, until the share of my said son shall have been fully paid off and discharged.

The said trustees shall pay to each of my said daughters, on their respectively attaining to the age of twenty-one years, the sum of two thousand dollars, and every two years thereafter the sum of two thousand dollars, until the share of each shall have been fully paid off and discharged; but if, after making said first payment to each of my said daughters, my said trustees shall deem it expedient to make the subsequent payments less than two thousand dollars each, they are authorized in the exercise of a fair and sound discretion, to diminish such subsequent payments accordingly, provided they use no unnecessary delay in making ultimate payment of the share of each as aforesaid.

If my said son should die before receiving payment of his

share as aforesaid, leaving no lawful issue, then his share remaining in the hands of said trustees shall be paid and delivered over in equal shares to my daughters and their heirs and assigns forever; and if any one or more of my said daughters shall die, before receiving payment of their respective shares as aforesaid, then, in case such decedent or decedents shall leave no lawful issue, their respective shares aforesaid remaining in the hands of said trustees shall be paid and delivered over, in such manner and proportion, that my said son shall have two-fifths of each share and the surviving daughters the residue thereof in equal shares to them respectively and their respective heirs and assigns forever. If any one or more of my said children shall die, leaving lawful issue, then such issue shall be entitled in equal portions to the share or shares of the respective parent or parents remaining in the hands of said trustees; but, in such case the said trustees are empowered and directed to hold and dispose of such share or shares, in such manner that said issue only and their legal representatives, and no other person or persons, shall have benefit or advantage thereof.

I own a small wood-lot of about seven and a half acres in the north part of Guilford near the Durham line. * * * * I also own another small piece of wood land. * * * * These pieces of land I direct my executors to sell to the best advantage, and to add the proceeds of sale to the general fund.

I own two houses in the city of New York * * * *. The ground on which both these houses stand is under lease from the Sailor's Snug Harbor at a yearly ground rent of $75 each, payable semi-annually on the first of May and first of November in each year. These two leases expire in May 1857, but are subject to the further terms of renewal, as will appear by reference to the original lease, which together with all transfers of leases down to me are in my possession, making the chain of title complete in my hands. I direct my executors to sell these two houses as soon as they can be sold to advantage, and to add the proceeds of sale to the general fund. The lease of house No. 142, at 1,075 dollars annual

rent expires May 1st, 1850, and the lease of house No. 146 at 1,000 dollars annual rent expires May 1st, 1849. This is a fair rent for both houses. If my said executors do not think proper to sell when these leases expire, I direct them to rent the houses again for one, two or three years, as they may judge best, to respectable private families, and no others, as has been heretore done, but in no cases for boarding houses or hotels. If these houses are not disposed of at the expiration of the respective leases in May, 1857, I direct that the leases be renewed for another term according to the provisions of the original lease, but to make sale thereof as soon thereafter as it can consistently be done, and to add the proceeds of sale to the general fund.

I direct that all bills of exchange and promissory negotiable notes on time, which I may have on hand at the time of my decease, shall be placed in bank or banks to be collected when due, and that the funds arising therefrom, as well as all other funds which may come into the hands of my executors, shall be invested in some safe interest paying stocks national or state, and some few banks of undoubted character and credit, until such funds are wanted to fulfill the provisions of this will.

My executors are authorized to exchange one kind of property for another from time to time, whenever they may deem it for the interest of the estate so to do.

  *   *   *   *   *   *

6. I revoke all wills, which I have heretofore made, and nominate and appoint David Lyman of Middletown, Connecticut, and my said wife Elizabeth Parsons, to be executors of this my last will and testament. It is my will that no bonds shall be required of my said executors or either of them for the faithful execution of their trust; and they shall respectively be allowed a fair compensation for their services.

The petition, which was brought by David Lyman, one of the executors, alone, after setting out the will, and stating the fact of the death of the testator, at the time before mentioned, alleged that the will was duly proved before the

probate court of the district of Middletown ;—that the peti-
tioner and the said Elizabeth Parsons accepted the trust of
executors of the will and gave bonds as such ;—that the tes-
tator, for many years preceding his death, resided in Dur-
ham ;—that he left four children named in the will, Cathe-
rine M., then twenty years of age, Joseph H., aged eighteen,
Elizabeth A., aged fourteen, and Caroline J., aged twelve,
all of whom, except the last, were at the date of the peti-
tion, more than twenty-one years of age ;—that the amount
of the estate left by the testator was about $147,000, the
regular income of which was about $8,000 per year ;—that
the value of the specific devises and legacies was $4,560,
and the amount of the debts $2,205 ;—that nearly the whole
estate had been converted by the executors into cash and
invested in dividend paying stocks and bonds ;—that the
executors had rendered an account of their administration
of the estate and of all their proceedings to the court of pro-
bate, which had been accepted by the court, and since then
had rendered to the court of probate annual statements of
the condition of the estate, and of their proceedings, which
had in like manner been accepted ;—that the residue of the
estate, after paying debts, specific legacies and the expenses
of administration, amounted to about $130,000, a large por-
tion of which was within this state ;—that the executors and
trustees had paid out, during the minority of the children,
such sums as were necessary and proper in their judgment,
for the support and education of the children, (stating the
amount paid to each,) and to such as had attained the age
of twenty-one years, the respective sums directed and per-
mitted by the will to be paid to them respectively at that
age and at every period of two years thereafter, to the full
amount to which, in the exercise of a sound discretion, they
deemed it most for the interest of the children respectively
to pay the same, viz.: to said Joseph, in all, the sum of
$30,000 ; to said Catherine, in all, the sum of $8,000 ; and
to said Elizabeth A., in all, the sum of $2,000 ;—that a large
amount of the estate was still remaining in the hands of the
petitioner and of the said Elizabeth Parsons as executors and

trustees, subject to the annuity to her, and to the trust created in the residue for the children;—and that the petitioner had been the active executor and trustee in the settlement of the estate and in the management and care of the property.

The petition then stated that the petitioner was in doubt as to the true construction of the clauses in the will which relate to the trust created for the benefit of the children of the testator, and particularly as to what disposition should be made of the surplus of the annual income of the estate, after making provision for the payment of the annuity to the widow and of the annual expenses of administration;—whether such surplus should be added to the principal until needed for the biennial payments to the children, or whether the same should be annually paid over to the children;—and if the same should be annually paid to the children, whether such payment should commence from the death of the testator, or from the times when the children should respectively attain the age of twenty-one years;—alleging that the children claimed that they were respectively entitled to such income, and to a payment of the same from the death of the testator, and threatened the petitioner with suits at law to compel such payment, and that some of them had commenced such suits against him and the said Elizabeth Parsons, in the city of New York, where all the children were then residing and where service was made on him and on the said Elizabeth while temporarily in the city of New York, which suits were still pending;—and that the petitioner could not proceed safely in the execution of the trusts, without the advice of a court of chancery in giving a judicial construction to the clauses of the will relating to the trusts;—further alleging that the petitioner had requested the said Elizabeth Parsons to unite with him in this application to the court, but that, influenced as he believed by an unwillingness to appear in opposition to her children, she had declined to do so.

Notice of the pendency of the petition was served, by order of the court, on all the children in the city of New York, and on the said Elizabeth Parsons. She appeared,

but the others made default of appearance. The facts alleged in the petition were found by the court to be true, and the questions of law arising on the facts were reserved for the advice of this court.

*Baldwin,* for the petitioner.

1. From the provisions of the fifth section of the will, which gives the residue of the estate, (after a specific devise to the wife, and subject to an annuity to her, and after a specific legacy to one of the daughters,) in trust to the executors, and provides for the exercise of discretion by them, at the various times of payment to the children, as to the amounts that shall be paid, and for the disposition, upon the death of any of the children, of the shares of such child remaining in the hands of the trustees, and that the trustees shall hold the shares in such manner that on the death of any child leaving issue, such issue only and their legal representatives and no other person shall have the benefit of such share, it is evident that the testator, whose intention is to be gathered from the instrument in its application to surrounding circumstances, did not intend that the shares of the children in such residue should vest *de jure* in them during the continuance of the trust, much less from the time of his death. It is true that the mere intervention of a trustee does not prevent the vesting of the estate in equity, if it can be seen to be the clear intent of the testator that the entire beneficial interest shall vest in the children respectively. The rule is stated clearly by Lord Hardwicke in the case of *Atkins* v. *Hiccocks*, 1 Atk., 501. In the common case of a legacy payable at the age of twenty-one, it is regarded as *debitum in presenti, solvendum in futuro,* and vests immediately, and is transmissible to the representatives of the legatee. But where the time of payment is contingent and may never arrive, as where dependent on an event that may never happen, it does not vest till the event happens. The language of the first clause of the section, taken by itself, would without doubt be sufficient to give to the children an absolute equitable estate as *cestui qui trusts.* But this would be at

variance with the manifest intention of the testator as shown by the directions to his executors, in regard to the support of the children during minority, in regard to what sums and at what times payment should be made to the children, in regard to the " general fund " from which the annuity to the wife and the discretionary payments to the children were to be made, and with regard to the dispositions of the shares of decedents dying without issue before full payment. These trusts were confided to the discretion of the trustees, and the directions in regard to them are inconsistent with, and repugnant to, a supposed intention derived from the preceding language of the devise taken by itself. Where clauses of a will are irreconcileable, the posterior one must prevail. 1. Jarman on Wills, 414. *Sherratt* v. *Bentley*, 2 M. & Keene, 149. Here the general words of the devise must be regarded as having been used with reference to the qualifying provisions immediately following. *Deihl* v. *King*, 6 Serg. & R., 29. Willard's Equity, 507. 2 Wms. Exrs., 1035. It is very clear that the testator contemplated that the whole estate might never go to the children, and that it was not his intention that they should have power to dispose of it, except so far as they might have received the portions expressly provided for. That these directions to the executors do not vest the estate in the children, see 1 Roper on Leg., 566, 570, *Stapleton* v. *Creales*, Prec. in Cha., 317, and *Grant's case*, cited in 10 Rep., 50 a. The question in such cases is, whether a testator intended to make the time of payment an incident of the *payment* merely, or of the *gift itself*. If the latter, the legacy does not vest before the time of payment, and if the legatee dies before that time no interest passes to his legal representatives, although language that, taken by itself, is expressive of an immediate gift, be employed in the will. 2 Wms. Exrs., 1051, 1054. In the present case, the payments directed by the will depend on the continuance of the lives of the children, their amounts on the discretion of the trustees. By no possibility could the legal representatives of a deceased child take any thing under the will but what had actually been received by the child. All the rest is ex-

pressly controlled by the directions of the testator in that event. *Atkins* v. *Hiccocks*, supra. 1 Roper on Leg., 386. *Onslow* v. *South*, 1 Eq. Cas. Ab., 295. 2 Wms. Exrs., 1051.

There was no necessity for the testator's making any express provision for the accruing income from the investments to be made by the executors, because he had provided that his whole estate should ultimately go to his descendants, and he had made all the provision that he deemed necessary for his children in the specified and discretionary amounts which he had directed his trustees to pay to them. The limitation of those payments shows that he deemed it inexpedient that they should receive any larger sums than the highest which he had authorized the executors to pay them. A construction of the will which would give them the whole income of the estate in addition, more than doubling the amounts to be paid to them by the executors, and that with no discretionary control on the part of the trustees as to the amount to be paid them from the income, is clearly inconsistent with the manifest intention of the testator to limit the payments and to leave to the trustees the exercise of discretion within that limit. His own judgment as to what was sufficient for his children may be inferred from the provision for his wife, in whom he had entire confidence and to whom he gave only an annuity of $700. The provision which the testator has made for the disposition of the residue on the deaths of the children, shows that he did not expect the payments to exhaust the estate, while in providing for a disposition of the residue he shows clearly that he did not intend this residue, that is, the entire prospective share of each child, to vest in them "and their heirs and assigns,"—as expressed in the devising clause of the fifth section. It is only by taking the whole section together, and qualifying the general words of the devising clause by the directions afterwards given to the executors, that the intention of the testator as to the vesting of the shares of the children can be ascertained, and that intention, as thus ascertained, is manifestly that the shares should not vest immediately.

2. Out of what fund are the payments expressly provided

for in the will to be made ? Are they to be made only from the principal, as claimed by the respondents, or from the estate generally ? We claim that they are to be drawn from a general fund, made up of the estate, and the investments thereof, left by the testator, and the income from the same from time to time accruing.

The bulk of the estate of the testator, at the time of the making of his will, consisted of notes, bills of exchange and stocks. The bills and notes he directed his executors to collect, and the funds arising therefrom, as well as all other funds which might come to the hands of the executors, he directed to be invested in some *safe interest paying stocks,* until such funds *should be wanted to fulfill the provisions of the will.* He also directs the executors to sell certain lands in Durham and " add the proceeds of sale to the *general fund."* By another clause he directs that certain real estate in New York be sold as soon as it can consistently be done and the proceeds of the sale *added to the general fund.* This " general fund" is made up of the property left by the testator and all rents, income, dividends, or other proceeds which should come into the possession of the executors during their administration of the trust. This general fund is to be created and kept, for the purpose of using it when required in *executing the trusts of the will.* These trusts are, the payment of the widow's annuity,—and, (according to the general devising clause,) the payment of two-fifths of the residue to the son, and three-fifths to the daughters. But by the subsequent clauses of the will it appears that the widow and children are not the only *cestui qui trusts,* but that they are, 1st. The widow, whose annuity is a charge on the whole estate ; 2d. The children of the testator; 3d. The surviving children, in the event of the death of either of them without issue before full payment; and 4th. The grandchildren of the testator, if the children so dying should leave issue.

The children claim that the fund for the execution of these trusts consists only of the *corpus* of the estate, *left by the testator,* and that all accumulations from rents, interest, and dividends are payable to them as they accrue, and are not to

be estimated as forming any part of the sums which, by express provision and with an express limitation as to amounts, the executors are required by the will to pay over to them. But these rents and dividends are "funds which come into the hands of the executors," and are therefore directed by the will to be invested by them till wanted to fulfill the provisions of the will.

It is not claimed that there is any express provision of the will which directs the payment of the income, as it accrues, to the children. But they claim that the entire *corpus* of the estate is *vested* in them, from the death of the testator, and that therefore the income *accrues to them as their own property*. They claim that the whole share vests in each child, because the *ultimate payment* of the shares is contemplated; and that the case is therefore like a gift *in presenti*, payable when the legatee shall be twenty-one years of age, or in installments, which without doubt creates a vested interest. But that case differs *toto cœlo* from the present, inasmuch as there is there no contingency prescribed by the testator, but the payment of the entire amount is contemplated; while here the testator himself prescribes contingencies which might prevent the children from receiving the shares in their life time, and in view of those contingencies as probable, he directs the disposition to be made, in that event, of the unpaid part of the shares,—under which disposition the persons taking the remainder of the shares will take as devisees of the testator, and not as representatives of the deceased child. Now on what principle can it be pretended that the title to this portion, thus withheld from a child by the will of the testator, to which such child had no claim in his life time, nor his legal representatives after his decease, *vested* in such child, so as to entitle him absolutely, as his property, to the accruing income?

An intention that each child should receive the entire income of his share as it accrued, at all events, and so much of the principal as the executors might pay under the express directions of the will, in addition, is disproved by the direction given to the executors to pay for the expenses of the

support and education of the children *during minority* and charge the amount to their *respective shares* of his estate. He would of course have known that the income of their shares, which in that case would be payable to their guardians, would be much more than sufficient for their education and support, and that to provide for the payment of these expenses out of their *shares* of his estate would be wholly unnecessary. He must have regarded their shares as consisting of *principal and interest*, no part of which would be payable for their benefit except in the manner expressly provided for in the will.

The accumulation on the share of the youngest daughter, which she would be entitled to receive on coming of age in 1857, would have amounted to $15,000, besides the $2,000 then payable by the express provision of the will. It can not possibly have been the intention of the testator, whose will shows him to have been cautious and considerate with regard to the amounts which his children should have at their disposal, that this amount should be placed at the absolute disposal of his youngest daughter on her reaching that age, when his eldest daughter, in whom he knew, from her age at the time the will was made, that he could confide, was limited to her biennial allowance and comparatively small accumulation of income.

*Dutton*, and *W. Stanley* of New York, for the respondents.

First. The children of the testator have vested interests in the portion of his estate not specifically bequeathed, subject to the widow's annuity, and subject to be divested as to the portion that may remain in the hands of the executors at the time of the children's death. The son's share was two-fifths of such estate. Each daughter's was one-fifth. The children are entitled to the income of these shares, and to the specified biennial payments from the principal, always leaving of the principal sufficient for the annuity.

1. That the children took vested interests, appears expressly on the face of the will, and these vested interests are repeatedly recognized in parts of the will subsequent to the

clause creating them, and there are no provisions even tend-
ing directly or by implication to divest these expressly vested
interests. The extrinsic facts in evidence also show that the
interests are vested. 1st. The fifth clause expressly gives a
vested interest to the children. Its language is, " All the rest,
residue and remainder of my estate, * * * I give, devise, and
bequeath to my executors hereinafter named, in trust, two-
fifth parts thereof for the sole use and benefit of my son
Joseph H. Parsons, and his heirs and assigns forever, and the
remaining three-fifth parts thereof for the sole use and benefit
of my daughters Catharine M. Parsons, Elizabeth A. Par-
sons and Caroline J. Parsons, in equal shares respectively,
and their respective heirs and assigns forever." This is the
*gift clause*, the only one giving this property, except the sub-
sequent one giving it over upon the future contingency of
death. It covers all the property of the testator which was
his at the time of his decease, and which he had not by
the will previously disposed of. It fixes absolutely, the
persons who were to have the title, and the persons who
are to have the sole use and benefit of this property. The
former were the trustees, the latter the children. The
words " in trust for them, their heirs and assigns," are the
exact and even technical words to convey an equitable fee
simple in real estate. Much more do they carry personal
estate, which always passes even without words of limita-
tion, unless there are express words of qualification. *Adam-
son* v. *Armitage*, 19 Vesey, 415, 418. *Cadogan* v. *Ewart*, 7
A. & E., 636. *Daine* v. *Doe*, 8 T. R., 112. *Challenger* v.
*Shepard*, id., 597. The word " forever," denotes that the
gift is absolute. It is therefore incontrovertible, if the will
had stopped here, that by this clause the gift of all this resi-
due would have vested instanter on the testator's death, the
legal title to all of it in the trustees, and the equitable and
beneficial interest in all of it in the children. 2nd. These
interests expressly vested by the fifth clause, are repeatedly
recognized as vested interests in subsequent parts of the will.
The testator speaks subsequently of the son's share as *his
share* five times, and of the daughters' shares as *their shares*
six times. He speaks of the sums biennially to be delivered

to the children as *payments*, a term applicable only to money in the hands of one person belonging to another. He says that there must be "no unnecessary delay in making payment;" that there must be an "ultimate payment;". that the shares must be "paid off and discharged." 3rd. There are no provisions in the will divesting, or even tending to divest, directly or by the slightest implication, these expressly vested shares, except the limitation over upon the future contingency of death, by which they can be divested only on the happening of that contingency. The provision for an annuity certainly can not affect the vesting. Nor can the intervention of the trust. *Trevanion* v. *Vivian*, 2 Ves. Sen., 430. *Glanvill* v. *Glanvill*, 2 Merivale Ch., 38. Nor the provision for maintenance. *Fonerau* v. *Fonerau*, 3 Atk., 645. *Hoath* v. *Hoath*, 2 Brown Ch., 4. *Walcott* v. *Hall*, id., 305. Nor the provision postponing the payment of the gift. 1 Sw. Dig., 151. 4 Kent Com., 214. 1 Jarman on Wills, 756. Preston on Leg., 68, 75, 80, 90. *Fonerau* v. *Fonerau*, 3 Atk., 645. *Stapleton* v. *Cheale*, Prec. in Ch., 317. *Breedon* v. *Tugman*, 3 Myl. & K., 289. *Boraston's case*, 3 Rep., 19, *note* k. *Edwards* v. *Hammond*, 4 Bos. & Pul., 324, *note* a. *Bromfield* v. *Crowder*, id., 313. *Sweet* v. *Chase*, 2 Comst., 73. *Patterson* v. *Ellis*, 11 Wend., 260. Nor the circumstance of a gift over. *Davies* v. *Fisher*, 5 Bevan, 201. *Walcott* v. *Hall*, 2 Brown Ch., 305. *Cadogan* v. *Ewart*, 7 A. & E., 636. Nor the provision that certain property should be sold and the proceeds added to the general fund; the whole meaning of which provision is, that the executors are not to keep the avails of these pieces of property separate from the rest. Nor the investment clause; that clause not requiring the income of these investments to be invested, and the words "all other funds" following a specification of certain funds, meaning only any other property of the testator which he might have failed to mention; besides which, the trustees were to keep this fund so invested only until wanted to fulfill the provisions of the will. 4th. Extrinsic facts fortify the construction derived from the will alone, that vested interests were intended to be given. These facts are, the

value and productiveness of the testator's property, and the ages of the children when the will was made, and at the time of his decease.   Evidence of these facts is always admissible, to assist in ascertaining the intent of a testator.   Jarman on Wills, 525.   Looking at these facts in connection with the will, if these interests are not vested, we discover,—(a.) That the daughters can never receive one farthing of the principal of that which he has called in the will *their share* six times; of that which he has said should be *paid to them;* of that which he has said there should be *ultimate payment;* of that which he has said should be *paid off and discharged;* while the son, in regard to whom he has not used language so strongly indicative of his intention that he should have his share, may receive every dollar.—(b.)   That as to the shares he has termed the daughters', there is an intestacy, or a per-petually accumulating fund, while it is evident that he did not intend to die intestate, and did intend that the estate should be a diminishing, and not an increasing estate.—(c.) That the will is inconsistent, as it is evident that the daugh-ters can not have the " sole use and benefit " of one-half of their shares, while the testator gives the *whole* shares for their sole use and benefit.

2. The interests of the children being vested, they are, as matter of law, entitled to the income of their shares from the time of the testator's death, all of which has hitherto been withheld from them.   The words " sole use and benefit," although so plain that it would seem that a question con-cerning them never could have been raised, have received a construction by the courts.   *Ex parte Roy,* 1 Madd. Ch., 199.   *Adamson* v. *Armitage,* 19 Vesey, 415.   *Meehan* v. *Sayer,* 4 Madd. Ch., 409.   *Covenhoven* v. *Shuler,* 2 Paige, 122.   *Glover* v. *Spendlove,* 4 Brown Ch., 237.   But it is a perfectly well settled principle, that if the principal is vested, the beneficiaries are entitled to the in-come.   *Montgomery* v. *Woodley,* 5 Vesey, 522.   *Glanvill* v. *Glanvill,* 2 Merivale Ch., 38.   *Nichols* v. *Osborn,* 2 P. Wms., 419.   *Taylor* v. *Johnson,* id., 504.   *Genery* v. *Fitzgerald,* 1 Jacobs Ch., 468.   *Trevanion* v. *Vivian,* 2 Ves. Sen., 430.

Giving the interest of an estate vests the principal. *Bunn* v. *Winthrop*, 1 Johns. Ch., 329. *Newland* v. *Shepard*, 2 P. Wms, 194. *Phillips* v. *Chamberlain*, 4 Ves., 58. Much more then does giving and vesting the principal, vest the interest. Principal carries interest, the interest to accrue upon the principal after the gift.

3. The biennial payments are payable out of the principal, out of the *corpus* of the estate—not out of the income. The testator, by giving his property for the " sole use and benefit " of his children, has given them that which entitles them to the income. Their guardians were entitled to receive and hold this income for them during their minority. The executors would have had no right to retain it, had guardians been appointed. No guardians having been appointed, the executors must apply it as if they were the guardians ; that is, upon their majority pay it, and afterwards as it accrues. The payments are to be continued until the shares are fully paid off and discharged. These payments are not to come out of the income, because they are already entitled to the whole of that. It is the produce of what had been given. They are not to come out of the income because the will does not say so. The word " income " is not used, and can not be interpolated. An accumulation is not to be presumed ; it is against the policy of the law. They are not to come out of the income, because they would never one-half exhaust it, and the share, which is directed to be paid, could never be paid. The testator made a gift, and directed its payment. The income was no part of the gift ; it was the produce of the gift after the gift had passed, to which produce the testator had no title. If he had expressly directed an accumulation of the income, he might have retained a control over it ; but not having done this, it was not his to give ; it was the children's.

Second. If the language of the will in relation to payments to the daughters limits the amounts which they can receive both from income and principal to $2,000 biennially, then this payment provision is repugnant to the previous devises, and contrary to the general intent of the testator, and there-

fore void; and hence both the income and the shares are payable immediately.

It is a well-established principle, that if any word or expression be repugnant to the general intention of the testator, as manifested in other parts of the will, it may be rejected as surplusage and shall not defeat a legacy or bequest. *Sargent* v. *Towne*, 10 Mass., 303. *Cook* v. *Holmes*, 11 id., 528. *Bartlett* v. *King*, 12 id., 537. *Nourse* v. *Merriam*, 8 Cush., 12. *Bradstreet* v. *Clark*, 12 Wend., 602, 665. *Norris* v. *Beyea*, 3 Kern., 273. It is just as well settled that the general intention of the testator overrules his particular intention if they are inconsistent. 2 Wms. Exrs., 789, 790. *Doe* v. *Harvey*, 4 Barn. & Cres., 620. *Chase* v. *Lockerman*, 11 Gill & Johns., 185. *Morton* v. *Barrett*, 22 Maine, 257. *Cook* v. *Holmes*, 11 Mass., 528. *Thelluson* v. *Woodford*, 4 Ves., 227, 329. The general intention of the testator clearly expressed in the will, was that the shares of his estate given to his children should be paid to them at some time, and in a reasonable time, provided they should live. If he also intended that such payment should be made to them by biennial payments of $2,000, this would be but a particular mode of effecting his general intention; and as such biennial payments would never be able to effect such general intention, that there should be ultimate payment of the shares to them without unreasonable delay, but would lock up the entire principal and a great portion of the income, it would be plainly repugnant to such general intention, and should therefore be stricken from the will. The one clause would direct payment of the shares, the other would forbid it. There can be no manner of doubt as to which is the general intention, the leading idea in the testator's mind, for he has enunciated it clearly and definitely. It is that his children shall be the recipients of his property and bounty. The other intention, that they shall have it by biennial payments of $2,000, is merely secondary, the mode in which they shall receive it. In such cases the court will not undertake to make a will by naming a time which they may suppose will come nearest to his desire, for that would be mere conjecture,

but will strike the clause from the will and leave the law to its operation.

Third. The maintenance of the children during minority is given out of *the principal of their shares.*

This would entitle them to some $12,000 more than if it is to come out of the income. The clause in the will relating to the subject is as follows :—" During the minority of my said children respectively, the said trustees are directed to expend such sums for their support and education respectively, as may seem to be expedient, charging the sums expended for each towards his or her share of my said estate." The expression " of my estate " can not mean the income, for the income is no part of the share of the testator's estate. It is the *product* of the share of such estate. The income is a part of the children's estate, not the testator's. It is a general canon of interpretation that the term *share* is limited to the original portion, unless particular expressions extend the meaning. *Ricketts* v. *Guillemard,* 5 Jurist, 818 and 12 Sim., 88. *Parsons* v. *Lyman,* 4 Bradf., 306. There are no such expressions here, and the limited meaning can not therefore be extended. There is nothing confining maintenance to the income. There is nothing permitting it to be paid from the income. If the will had not contained this clause, the guardians would, as a matter of course, pay the maintenance from the income. The insertion of this clause is therefore an indication that the testator wished it to be derived from a different source. The testator had the power to do this. There is nothing improbable in it. It may be remarked incidentally, that this construction helps the vesting, as it shows that the principal was intended for the children. *Fonerau* v. *Fonerau,* 3 Atk., 645 *Hoath* v. *Hoath,* 2 Brown Ch., 305.

Fourth. The executors have discretionary power to pay the son $10,000 a year, or rather $20,000 biennially, after he shall reach the age of 25. The language of the will is, that on his reaching that age, the trustees may pay him such sum as they shall deem best, " not exceeding in any one year $10,000,"—and so continue to make such payments from one period of two years to another. The executor under-

stands it as meaning, not exceeding $10,000 at any one biennial payment. But the language is clear, and the testator, in using the words "in any one year," must be presumed to have intended what the words mean,—to have had a further intent than would be implied by the language previously used. 2 Jarman on Wills, 743. *Campbell* v. *Campbell*, 4 Brown Ch., 15.

Fifth. In the construction given the will by the executor, its provisions are inconsistent and unreasonable, and his construction is improbable and even absurd. 1st. If the testator intended interest to accumulate upon interest in the executor's hands, that is inconsistent,—(a.) With the express gift to the daughters of their shares;—(b.) With the provision that they are to have the sole use and benefit of certain shares; for they do not have it if they can not have even the income;—(c.) With the idea of payment of their shares, three times expressed as to the daughters, twice as to the son;—(d.) With the idea of such payment without unnecessary delay. 2d. A construction is unreasonable that would destroy by implication an express gift;—that would give three of the testator's children, to whom he gave three-fifths of the principal of his estate, not one dollar of it, while one child, to whom he gave only two-fifths, takes the whole of that two-fifths;—that would forthwith upon one's death give that one's share to the survivors, but never give him a dollar of his own share;—that would give principal and interest to unborn issue, while the testator's own children would be disinherited. 3d. The $2,000 biennial payment theory, which amounts to an annuity of $1,000, is absurd. If the testator intended but that annuity, he would have given it in so many words, and not have filled the will with expressions of "their shares," "payment," "ultimate payment," "no unnecessary delay," &c. He knew the language requisite for an annuity, for he used it in giving one to the widow. 4th. The idea that the testator intended to create a perpetuity is absurd. Had he intended income to be piled upon income, he would have said so. It appears by the petition, that the annual income of the three-fifths was, when the will was made, only

fourteen days before his decease, nearly $5000. Then the
$1000 annuity would have taken but $3000 of it, and there
would have been $2000 left annually to add to the three-
fifth principal. But the $1000 annuity not beginning to
operate until twenty-one, and two of the children being as
young as twelve and fourteen, and being entitled only to a
mere subsistence before that time, the three-fifths would be
greatly increased when this theory would go into operation.
And he must have known that by such a construction they
never could receive one dollar of it. If he intended that,
why did he not direct specifically an accumulation ? Why
did he say their shares should be paid off and discharged ?
Why speak of ultimate payment without delay ? Why say
it was for their sole use and benefit forever ? Such construc-
tion is absurd.

Sixth. The will is complete, symmetrical, and consistent,
and the widow and the children were the objects of the tes-
tator's affection and bounty. The decree should be that the
executor retain sufficient for the annuity: that the children
take vested interests in their respective shares, liable to be
divested as to the portion in the executor's possession in case
of death before ultimate payment, and contingent interests
in remainder each in the other's share : that they are enti-
tled to the income of their shares, and to the specified bien-
nial payments from the principal: or (if the court should
hold that the biennial payment clause does not apply solely
to the principal,) that as regards the daughters, it is repug-
nant to the general intention of the testator, and void, and
that their whole shares are payable immediately: that their
maintenance during minority is chargeable upon the princi-
pal of their shares, and to be paid therefrom : and that the
executors have the discretionary power to pay the son
$20,000 biennially after he is 25 years of age.

ELLSWORTH, J. This is an application by one of the
trustees of the will of the late Samuel Parsons, to ascertain
what is the line of his duty touching certain trusts provided
for in the will.

We have carefully examined the instrument, comparing the provisions with each other, (which we think are clearly and fully expressed,) and are satisfied that we shall best carry out the intention of Mr. Parsons by designating for the trustees the course hereinafter prescribed.

The purport of the will is of course to be learned from the language of the instrument itself, comparing its parts and provisions with each other. We may and indeed we ought to take into consideration the surrounding facts and circumstances, or, as is sometimes said, put ourselves in the place of the testator, that we may the better interpret and apply the provisions of the will to the subject as it lay in the testator's mind. But, as we have said, the language of the will must be our rule, for we can not admit of a parol will, nor can we allow language to be construed otherwise than in its common acceptation. We may with propriety consider that the testator was aware that he was about disposing of a large estate among children of a tender age, who, from their want of experience, would need the care and supervision of others for several years, and respecting whom a parent might be solicitous as to the consequences which great and sudden wealth might produce on their welfare, and especially with regard to his daughters, who he knew might in the course of events be exposed to lose the money intended for their individual support and comfort, whether it should be their pleasure to marry or remain unmarried. But after giving due weight to every fact and argument as to the true interpretation of this will, which so clearly expresses the ruling purpose of the testator, we entertain no doubt how the will is to be understood and what is the duty of the trustees in carrying it into execution.

Our construction or the will is this :

After the devise to Mrs. Parsons of the dwelling house, with the furniture, books, carriages, farming utensils, and provisions, and a piano forte to his daughter Catharine, the testator directs that all the rest and residue of his estate (some $140,000) shall go to his trustees, and at an early day, (with some trifling exceptions not important to notice,) be

converted into cash, and made to constitute a "general fund," which is spoken of and recognized as such throughout the whole will.

The trustees are further empowered to invest and re-invest the property, from time to time, as they shall find necessary for the interest of the estate. They are to invest the whole in some safe interest paying stocks, national or state, and some few banks of undoubted character and credit, until such funds are wanted to fulfill the provisions of the will.

The *corpus* of the estate, and whatever grows out of or is added to it by interest, rents, or accumulation, we think go into the "general fund" to answer the provisions of the will.

This fund we think is to be single, kept in one account, and one rule is to be applied in the management of it, as well as in the investments and disbursements. The trustees are directed to rent the real estate in the city of New York until it can be judiciously sold, and in the mean time the rents are to go into the "general fund," as is all the interest *on existing and future investments.*

No distinction is made between the *corpus* of the estate, and interest or rents or whatever shall accrue from the estate. This obviously is the intention of the testator, as well as the natural and legal consequence of what he has positively ordered to be done, and we can not but express our surprise that a distinction is asked to be made between the *corpus* of the estate (or the "general fund,") and its interest or increment, when the distinction is no where hinted at in the entire will, and is inconsistent with its special provisions and its general tenor and spirit.

It is incredible that Mr. Parsons should have overlooked this so important a consideration, in a will which is a model of carefulness and exactness. The whole of the "rest and residue of the estate" constitutes an indiscriminate and indivisible fund, until the appropriations are wanted for the purposes of the will, which appropriations are to be made under and in pursuance of the will, and not upon an hypothesis of rights by inheritance or distribution, or by inferences

of law that the future increase of the estate under the management of the trustees is to be delivered over by them and take a different direction from the rest of the estate, or to be paid out otherwise than as is directed by the testator in his will. And further, we apprehend that the trustees of the general fund owe no duties to the children outside of the directions in the will. As executors they are to hold nothing for the devisees, but are to take as trustees only, in order that their discretion may regulate the investments and payments, especially the biennial payments, respecting most of which there is a contingency, which forbids the idea that the accruing interest is absolutely vested and to be paid over to the children whether the trustees think it will advance or destroy their happiness.

It is true indeed that the first clause of the 5th section of the will gives the property to the children, but it is in trust, and this trust is qualified and regulated by the provisions which follow, and these we may not overlook in order to remove the property or any part of it, from the control and discretion of the trustees, who shared so largely the confidence of Mr. Parsons.

There is no principle of law that requires us to regard exclusively this particular clause, but such a course is inconsistent with all the cases. The whole will must be read together in order to know how it is to be understood and applied. This we hold is very clear; and nothing but the most technical reasoning, and an undue weight given to this clause of the will by itself, can bring our minds to doubt the soundness of the views already expressed.

We might add that the will, in so many words, declares that whatever the executors shall receive from bills of exchange or promissory notes, (including of course interest already due and that might thereafter accrue upon them,) and from " any and all other funds," shall make a part of the " general fund " to be administered by the trustees.

Something may be learned as to the proper construction of the will from the manner in which the trustees are to pro-

ceed in paying from the fund, from time to time, in fulfill-
ment of the provisions of the will.    These payments we con-
ceive are to be made out of the accruing interest and rents,
as well as out of any other part of the fund.    First, the
widow is to be paid each year, so long as she remains unmar-
ried, $700 out of the general fund.    Next, out of this fund,
the children are to be provided for and educated by the trust-
ees, until they are respectively twenty-one years of age.
Are they, in addition, to be paid annually the accruing rents
and interest on their respective shares?—a sum which will
be very large, and must necessarily pass into the hands of
guardians to be appointed by the courts, that it may be
securely invested, kept and accounted for by them, and out
of the hands of the trustees, in whom Mr. Parsons reposed
special confidence; while, as we shall see, in looking at an-
other part of the will, Mr. Parsons never intended that the
daughters should, at any period of their lives, receive an
amount exceeding $2,000 biennially; and even this is subject
somewhat to the discretion of the trustees.    Next, when the
son is twenty-one years of age, he is to be paid out of the fund
$5,000,—and $5,000 more if the trustees think it for his in-
terest.    When he is twenty-three, they may pay him $10,000
if they think it for his interest; and when he is twenty-five
such sums as in their sound discretion they shall consider it
most for his interest to receive, but not exceeding in any one
year $10,000; and so on.    Is the son, besides this, to receive
annually the accruing interest on his share?    We think not.
Next, the daughters, when they attain the age of twenty-one,
are to receive $2,000, and after that biennially $2,000, under
a discretion in the trustees, but never to exceed at the rate of
a thousand dollars a year, and this is to be to their sole and
exclusive use.    One thousand dollars a year, we think Mr.
Parsons fixed as the maximum, to be paid to his daughters re-
spectively.    He had given his widow $700 annually, and
doubtless thought $1,000 a year was a proper sum for a
daughter, and with all possible affection for and confidence
in his children, he might have had, we can imagine, pruden-
tial reasons for such limitations as he has prescribed.

But it is said that if this restriction is to be applied to the daughters' shares, they may never receive their part of the estate during their lives.    They may not, it is true, though it is possible that they will.    We are not so confident however that the father expected that the children would receive the whole of the estate, for he has made provision for grandchildren, if any of it is left after the biennial payments are made under the discretion of the trustees.

It is again  said that the shares of  the children are vested estates, and that the accruing interest belongs to them as matter of pure law, and must be paid to them annually as distinct from any fiduciary trust or discretion in the trustees. We think this is not correct.   A part only of the interest or estate which goes to the children can be said  to  be vested, and were it otherwise, it would not follow that the bequests are delivered from the personal control and discretion of  the trustees.    Everything  must depend here upon  the true construction of the will, and this brings us back to  the question we  have already been considering, so that we  do not accede to the truth of  either  the premises or the conclusion of the reasoning of the respondents.

Some other  questions have been examined  and very ably discussed in the  arguments of  counsel, which we  have had no occasion to decide, and we prefer to confine our decision to the points expressed, answering, as we suppose we do, all the requests of the acting trustee for instructions in the execution of his trust.

It is the opinion and advice of this court, that, by the true construction of the will of said Samuel Parsons, the  surplus annual income of  the  estate  held  in trust by his executors and trustees, after making  provision for the payment of the annuity  to  the widow  of  the testator  and  of the annual charges of  the executors and trustees for their  services and expenses, should be, by the executors and trustees, retained and invested, and added yearly to the principal of the estate, until needed for the biennial payments to the children of the testator, as directed  in  the  will, and  should  not be yearly

Lyman *v.* Parsons.

paid and distributed to the children in addition to the biennial payments to them; and that the superior court should declare accordingly.

In this opinion the other judges concurred.

[NOTE. The will, upon the construction of which the court has passed in the foregoing case, has been before the courts of the state of New York for construction. Before the present decision was rendered, Judge Bradford, the learned judge of the surrogate's court of the city of New York, upon a proceeding before that court to compel the trustees to render their account of the assets within that state and to pay over to the legatees such sums as they should be found to be entitled to under the will, had given an elaborate opinion, sustaining the claims of the present respondents. The present suit having however been instituted during the pendency of that proceeding before the surrogate, the decree was held in suspense until the opinion of this court should be given. After the present decision was rendered, the case was reargued before Judge Bradford, who however adhered to his former opinion and made a decree accordingly. From this judgment the principal trustee appealed to the supreme court, before which the case was argued in May, 1858, and which in October following rendered a judgment reversing the decree of the surrogate's court in all respects and fully sustaining the opinion of our own court. Justice Clerke dissented and gave an opinion fully sustaining that of the surrogate. From this judgment the legatees appealed to the court of appeals, before which the case is now pending. The opinion of Judge Bradford may be found in 4 Bradfords' Reps., 268. The decision of the supreme court has not yet been reported. As the case is not only important in itself, but has acquired a special interest from the facts above stated, I have given more space to the able arguments of the counsel than I feel at liberty generally to do. REPORTER.]